# Wptheville

## W. L. WINGFIELD V. COMMONWEALTH OF VIRGINIA.

June 10, 1940.

Record No. 2266.

Present, Campbell, C. J., and Hudgins, Gregory, Browning, Eggleston
and Spratley, JJ.

The opinion states the case.

*W. W. Wharton* and *Burnett Miller, Sr.,* for the plaintiff in error.

*Abram P. Staples, Attorney-General,* and *Joseph L. Kelly, Jr., Assistant Attorney-General,* for the Commonwealth.

GREGORY, J., delivered the opinion of the court.

W. L. Wingfield was indicted for grand larceny, tried by a jury, and found guilty. His punishment was fixed at one year in the penitentiary, and the judgment of the trial court upholds the verdict.

The accused in his petition sets forth the basis of his complaint in this language: "The real ground upon which the petitioner seeks a reversal of this case is the inadequacy and insufficiency of the evidence to justify the verdict."

A close analysis of the evidence, in the light of the elementary principles controlling the legal effect of a verdict approved by the trial court, discloses the following facts: W. E. Lucas owned a store building and service station, which were operated by his son, W. E. Lucas, Jr. The latter and his wife lived on the premises in an adjoining building. He had other employment and during his absence the store was attended by his wife and father.

The store building could only be entered by a single front door. The windows were screened and locked from within. A counter ran across the rear of the store room and near the center of the counter were a set of scales. Under the scales was the cash drawer, which could only be opened by someone standing behind the counter. It had no lock or combination, and no bell or gong sounded when it was opened.

On September 29, 1939, when Mr. Lucas, Sr., was in charge of the store the accused, who repaired scales, came in and was permitted to go behind the counter to examine the scales. He stated that the scales were not accurate and

needed repairs which he would make for $9.00. His offer was declined by Mr. Lucas, Sr., and in a short time the accused left. On the same day, after the accused had gone away, the official inspector of weights and measures for Rockingham county inspected the same scales, found them accurate, and approved them.

On October 3, 1939, the accused returned to the Lucas store. Mrs. Lucas, the wife of Lucas, Jr., was in charge at the time. He offered to oil the scales at no charge. No other person except the accused and Mrs. Lucas was in the store. He asked Mrs. Lucas to get him some gasoline and she stepped outside and obtained it from the gasoline pump, which was ten feet from the front door, and carried it to the accused who was standing behind the counter and in immediate proximity to the unlocked cash drawer, which contained $110.00. He sent Mrs. Lucas for an additional quantity of gasoline, stating that the quantity she had previously brought was insufficient. She complied with his request and brought the additional gasoline, and in a short time he left. He was in the store on this occasion about ten minutes. Soon after his departure the loss was discovered by Mrs. Lucas.

When the accused was first in the store and working on the scales Mrs. Lucas had occasion to place money in the cash drawer. She testified that she asked him to move in order that she could open the drawer. Therefore, it is clear that he knew where the money was kept. On the later date, October 3, 1939, Mrs. Lucas placed $90 in currency and $20 in coin in the cash drawer. It was put in a cloth money bag and was to be used to pay for gasoline and groceries that were to be delivered that afternoon. At 3:30 or 3:45 P. M. on October 3 Mrs. Lucas opened the bag and took out four one-dollar bills to pay for some meat which was delivered by one Zimmerman. He commented on the quantity of money she had at the time, saying it was "a pretty nice roll; a wad big enough to choke a cow." It was just ten or fifteen minutes later when the accused came in. Mrs. Lucas at first objected to his oiling the scales, but

finally gave him permission. She stated that the first time she went after the gasoline she was out for a "minute or two," and the second time she was out two or three minutes. .. Some ten or fifteen minutes after the accused left one Miller came in the store to deliver groceries and when Mrs. Lucas opened the money bag to get the money to pay him she discovered that $75.00 had been stolen therefrom. Between the visits of Zimmerman and Miller, which was from one-half hour to forty-five minutes, no one was in the store except the accused and Mrs. Lucas. A short time after the accused left the store he admitted that he had "quite a roll of money." He denied all knowledge of the theft and stoutly maintained his innocence.

The testimony of W. E. Lucas, Jr., and his wife, as well as that of Zimmerman, was evidently believed by the jury, and it was sufficient to establish the fact that the $110 was actually in the cash drawer while the accused was there and within his easy reach. The testimony of Zimmerman shows that the money was there just before the accused came in and that of Miller discloses that it was not there just forty-five minutes later. Mrs. Lucas testified that no one came into the store during that time except the accused. We are of the opinion that the evidence was sufficient to sustain the verdict.

The court fully and fairly instructed the jury. They were told the circumstances of suspicion alone, however grave and suspicious, would not warrant a conviction. They were also fully instructed upon the presumption of innocence and reasonable doubt; therefore the several other instructions offered by the accused touching these legal principles would have been only a repetition.

The loss of the money was discovered while witness Miller was in the store. He testified that "she looked so surprised," that "the expression on her face was so funny," and that he asked her "what was the matter and whether she had been robbed." She replied, "Yes, I have. I had so much money, some fives and tens there." This testimony was objected to as hearsay.

We think the testimony was competent to show when the loss was discovered. Miller was there around 4 P. M. The expression on Mrs. Lucas's face was a circumstance of probative value. Her expression of surprise was inconsistent with any theory that she might have taken the money herself and feigned the robbery. The only other person who had an opportunity to take the money was the accused. For these reasons and under the particular circumstances of this case we hold that the introduction of this evidence was not error.

The judgment should be affirmed.

*Affirmed.*